## A99A1925. FULTON COUNTY BOARD OF TAX ASSESSORS v. VISITING NURSE HEALTH SYSTEM OF METROPOLITAN ATLANTA, INC.

(532 SE2d 416)

RUFFIN, Judge.

Visiting Nurse Health System of Metropolitan Atlanta, Inc. (VNHS) is a nonprofit corporation that provides home health care services. After the Fulton County Board of Tax Assessors (the Board) assessed ad valorem taxes on certain tangible property owned by VNHS, the corporation appealed to the Board of Equalization, which ruled that the property was taxable. Following a de novo appeal to Fulton County Superior Court, VNHS moved for summary judgment, arguing that it was exempt from taxation as a purely public charitable institution. The trial court agreed and granted VNHS's motion. In four enumerations of error, the Board appeals this ruling. For reasons that follow, we reverse.

To prevail on a motion for summary judgment, the movant must demonstrate that there are no genuine issues of material fact and that the evidence, viewed in the light most favorable to the nonmovant, warrants judgment as a matter of law.[1] So viewed, the evidence demonstrates that VNHS is a nonprofit corporation that is afforded tax-exempt status by the Internal Revenue Service under § 501 (c) (3) of the Internal Revenue Code. In keeping with its nonprofit status, the directors of VNHS receive no compensation, and although VNHS has one member, it has no shareholders and makes no distributions. But VNHS does have approximately 900 paid employees, including its president, Kathleen Ziegler, who also serves on the board of directors. Ziegler receives a salary for her work as president but receives no compensation for her work as a director.

According to the annual report, in 1996, VNHS had $58 million in revenue, which included over $12 million in "uncompensated care."[2] The largest portion of its revenue came from Medicare at sixty-eight percent, followed by insurance companies at fifteen percent, and self-pay and "other" at nine percent. Its expenses that year were approximately $59 million, with the bulk of expenses (72 percent) going to salaries and benefits for its employees.[3]

Although the annual report showed that VNHS suffered a loss in 1996, Ziegler admitted that, in some years, VNHS has made money. Ziegler testified that when that happens the money "goes back into

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] The annual report is actually the report for Visiting Nurse Health System, the parent company of VNHS.

[3] The remaining expenses were broken down as follows: ten percent for services, supplies and transportation; six percent for depreciation and interest; five percent for administrative and general expenses; four percent for occupancy; and three percent for "other."

services. [VNHS] may buy equipment[,] . . . may care for more patients, [or may] be able to provide for indigent care." In 1996, VNHS provided approximately $3.4 million in indigent care.

VNHS houses its clinical and administrative staff at 133 Luckie Street. No medical care is rendered at this facility. The Board assessed ad valorem taxes on certain tangible property located at 133 Luckie Street, including computers, desks, and other furnishings. VNHS applied for a tax exemption. Following denials by both the Board of Tax Assessors and the Board of Equalization, VNHS appealed to superior court, arguing that it qualified for an exemption as a purely public charitable institution or, in the alternative, as a hospital under OCGA § 48-5-41 (a) (5) (A). VNHS moved for summary judgment, and the trial court granted the motion, finding that VNHS was a purely public charitable institution.

1. In its first enumeration of error, the Board contends that the trial court relied upon inadmissible evidence in granting summary judgment. Specifically, the Board asserts that the evidence that VNHS was afforded tax-exempt status by the state and federal governments was irrelevant and thus should have been excluded.[4] We disagree.

Evidence is relevant if it logically tends to either prove or disprove a material fact.[5] Here, the fact that VNHS is a nonprofit organization exempt from other taxes tends to prove that it is, in fact, a charitable institution.[6] Although this fact is not conclusive in determining whether VNHS should be exempt from ad valorem taxation, the trial court did not err in considering this evidence.[7]

2. The Board also contends that the trial court erred in holding that VNHS qualifies as a purely public charitable institution as a matter of law. We agree.

Initially, we note that "[c]laims for tax exemption are construed in favor of the state and against the taxpayer."[8] Under OCGA § 48-5-41 (a) (4), "[a]ll institutions of purely public charity" are exempt from ad valorem taxes. But this is a narrow exception. As the Supreme Court noted, "[t]here are infinite charities that deserve the plaudits of all mankind, but the [law] restricts tax exemption of institutions of

---

[4] The Board also contends that the trial court relied upon matters that were not contained in the record. As the Board neither enumerated this as error nor addressed this contention in its argument, the issue is deemed abandoned pursuant to Court of Appeals Rule 27 (c). See *Bradshaw v. Byrd*, 235 Ga. App. 25, 26 (1) (508 SE2d 433) (1998).

[5] *Cook v. State*, 232 Ga. App. 796, 797 (1) (503 SE2d 40) (1998).

[6] See *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization &c.*, 261 Ga. 558-559 (2) (a) (408 SE2d 699) (1991) (nonprofit status is a factor for consideration).

[7] Id.

[8] *Annandale at Suwanee v. Gwinnett County Bd. of Tax Assessors*, 242 Ga. 241 (248 SE2d 640) (1978).

charity to those and those only that are purely charity and also that are public charity."[9]

In *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization &c.*,[10] the Supreme Court set forth the test for determining whether an organization qualifies as a purely public charity. This test requires that: (1) the institution must be devoted entirely to charitable pursuits; (2) the charitable pursuits must be for the benefit of the public; and (3) the property must be used exclusively for those charitable pursuits.[11] Here, the record is simply insufficient to establish that VNHS passes this test as a matter of law.

To survive the first prong of the *York Rite* test, VNHS must demonstrate that its sole purpose is to dispense charity.[12] The fact that VNHS charges patients for services rendered suggests that it is not a charitable institution. Although an institution that charges people who are able to pay may still qualify as an institution of purely public charity,[13] where the primary purpose of the institution is to service those patients who do pay, then it cannot be said to be purely charitable.[14] Here, there is no question that VNHS serves a benevolent purpose in providing home health care to those patients who cannot afford such services. But the fact that the vast majority of VNHS's patients pay for services either through insurance or Medicare mitigates against a finding that VNHS is entirely charitable in nature. Moreover, there is no evidence to demonstrate that the revenue generated in excess of expenses is devoted *exclusively* to charitable purposes.

Under the second prong of the *York Rite* test, the charitable pursuits must be for the benefit of the public. The amount of revenue generated by VNHS, however, also suggests that it is not a purely *public* charity. Although VNHS has no shareholders and does not distribute profits, if its main purpose is to generate revenue rather than serve the needy, then its principal beneficiaries could be considered its employees rather than the public.[15]

Under the third prong of the *York Rite* test, the property at issue must be used exclusively for charitable pursuits. Here, there simply is no evidence to support the conclusion that VNHS uses all the prop-

---

[9] (Punctuation omitted.) *Ga. Osteopathic Hosp. v. Alford*, 217 Ga. 663, 667 (124 SE2d 402) (1962).

[10] Supra.

[11] See id. at 558 (2).

[12] *Institute of Nuclear Power Operations v. Cobb County Bd. of Tax Assessors*, 236 Ga. App. 48, 53 (3) (510 SE2d 844) (1999).

[13] *Chatham County Bd. of Tax Assessors v. Southside Communities Fire Protection*, 217 Ga. App. 361, 364 (457 SE2d 267) (1995).

[14] *Annandale*, supra.

[15] See *Alford*, supra at 668.

erty at issue for charitable pursuits. Given the dearth of evidence that VNHS qualifies as a purely public charity, issues of fact remain as to whether it is exempt from ad valorem taxes.[16] Accordingly, the trial court erred in granting summary judgment on this basis.

3. Because a grant of summary judgment will be affirmed where it is right for any reason,[17] we must address whether VNHS qualifies for a tax exemption as a hospital under OCGA § 48-5-41 (a) (5) (A). We hold that it does not.

Taxation is the rule, and exemption is the exception to the rule.[18] Accordingly, we strictly construe taxation statutes, and we will not find an exemption unless it is clear that the legislature intended such exemption.[19]

Under OCGA § 48-5-41 (a) (5) (A), property owned by "nonprofit hospitals" that is used in connection with the hospital's operation is exempt from ad valorem taxes. "Hospital" is defined as "an institution in which medical, surgical, or psychiatric care is provided to individuals who are sick, injured, diseased, mentally ill, or crippled."[20] VNHS asserts that it is exempt from ad valorem taxes as a nonprofit hospital because it provides medical services to the sick or injured. A home health care organization, however, is not a hospital any more than a group of doctors is a hospital. According to the plain language of the statute, the hospital is the institution *in which* care is rendered. With home health care, there is no single location or "institution" in which care is rendered. Although home health organizations do provide some of the same services as a hospital, until the legislature clearly extends the exemption to such entities, we are constrained by the statute to find that no such exemption exists.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 24, 2000.

*Johnson, Freeman & Perkins-Hooker, Maureen M. McLeod, Thomas A. Cox, Jr.,* for appellant.

*Kilpatrick Stockton, David M. Zacks, Burleigh L. Singleton,* for appellee.

---

[16] See *Annandale*, supra.
[17] *Porquez v. Washington*, 268 Ga. 649, 652 (3) (492 SE2d 665) (1997).
[18] *Zach, Inc. v. Fulton County*, 235 Ga. App. 478, 480 (2) (509 SE2d 746) (1998).
[19] Id.
[20] OCGA § 48-5-40 (4).